UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOMAR DAVELL ROBINSON,

        Petitioner,                                 Case Number 19-11420
                                                                Honorable David M. Lawson
v.

TONY TRIERWEILER,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

On March 28, 2014, Basim Sulaka, the owner of the Moon Lite Party Store in Shelby Township, was shot to death during an armed robbery. Jomar Davell Robinson admitted to police that was the "bagman" during the three-man heist. At a trial before a Macomb County jury, Robinson and the two other men involved were convicted of first-degree felony murder, armed robbery, felony-firearm, and conspiracy to commit armed robbery. The trial court sentenced Robinson to life in prison for the murder conviction and lesser terms for the other offenses.

Finding no success on direct review, Robinson filed this habeas corpus petition under 28 U.S.C. § 2254 without a lawyer's assistance. He alleges that (1) his statement to police should have been suppressed because he requested an attorney, (2) he should have been tried separately from his co-defendants, (3) by anonymizing the jury, the trial court suggested to the jurors that the defendants were guilty and dangerous, and (4) insufficient evidence was presented at trial to sustain Robinson's felony-firearm conviction. These are the same issues he raised in the state courts. Because those courts adjudicated these claims in a way that did not contravene or unreasonably apply federal law, this Court will deny the petition.

I.

The Michigan Court of Appeals summarized the evidence presented at trial:

This case arises out of a fatal shooting that occurred during an armed robbery at a Clinton Township convenience store. The 51-year-old victim was the storeowner. All three defendants eventually confessed to their involvement in the robbery.

Before the robbery, defendants gathered at [Kenneth] Hill's apartment, then proceeded to the store in Hill's car. The store's surveillance footage showed three individuals — later identified as [former co-defendant Clinton] Grayson, Robinson, and [co-defendant Darius] Diaz-Gaskin — enter the store wearing dark clothing, gloves, and masks. The masked men placed "a block in the door to stop the door from locking behind them," presumably to defeat a push-button security device used by some stores that locks intruders inside when an alarm button is pressed. The first two men to enter the store were wielding firearms before they entered. The third masked man, Robinson, removed a red bag from under his shirt and appeared to be unarmed.

The victim emerged from a rear office area, and Diaz Gaskin jumped onto the countertop, began to "track[]" the victim with the muzzle of his handgun, and fired a single round, which struck the victim. The gunshot wound was necessarily fatal.

After he was shot, the victim fell to the ground, and Diaz-Gaskin subsequently aimed his semi-automatic handgun down at the victim's prone body. Due to a malfunction, however, Diaz-Gaskin's weapon could not be fired again immediately. Robinson removed money from the cash register, depositing it in the bag he carried, and the masked men fled. A passerby, who noticed the men fleeing the store, promptly called the police and reported the incident as a suspected robbery. A responding officer discovered the victim dead on the floor of the store.

According to Detective Dan Quinn of the Clinton Township Police Department, the police originally had little information about the masked men, and thus had no initial suspects. But the police ultimately received 74 "tips" regarding the robbery, several of which implicated defendants. After investigating and surveilling defendants, the police became convinced that Grayson and defendants were the perpetrators of the robbery, and all four suspects were arrested.

After obtaining *Miranda* waivers, Detective Quinn and Detective Brian Gilbert performed a custodial interrogation of each of the four suspects. Defendants all initially denied any involvement in the robbery, but each subsequently confessed to his role.

Robinson stated that he was unarmed during the robbery, and "didn't see the guns" carried by Grayson and Diaz-Gaskin. But Robinson acknowledged that he "knew" Grayson and Diaz-Gaskin were armed before the robbery occurred. Diaz-Gaskin

denied that he had intended to shoot the victim, claiming that his handgun had accidentally discharged.

Diaz-Gaskin stated that he "thought he had the safety" of that weapon engaged and believed that his finger was not on the trigger, but when he "went to strike the victim" with the gun, it accidentally discharged. Contrastingly, based on the fact that Diaz-Gaskin "tracked" the victim with the muzzle of the semi-automatic handgun before firing, Detective Quinn opined that the shooting was not accidental but was, rather, a deliberate act. Diaz-Gaskin admitted that he was in possession of the semiautomatic handgun at Hill's apartment before the robbery and in Hill's car on the drive to the robbery. Diaz-Gaskin also penned a confession letter, expressing his remorse.

Hill provided the police with both a written confession of his involvement as the driver and an oral confession.

Defendants were subsequently convicted and sentenced as previously set forth. Their instant appeals ensued.

*People v. Robinson*, No. 329209, 2017 WL 535546, at *1-2 (Mich. Ct. App. Feb. 9, 2017) (footnotes omitted).

Robinson filed a pretrial motion to suppress his confession, which was denied. After the jury convicted him of the murder, robbery, and firearm crimes, he filed a direct appeal raising the four issues mentioned earlier. The Michigan Court of Appeals affirmed his convictions and sentence, *ibid.*, and the Michigan Supreme Court denied leave to appeal, *People v. Robinson*, 901 N.W.2d 107 (Mich. 2017) (Table).

Robinson then filed a timely habeas corpus petition raising the following claims:

I. The trial court reversibly erred in denying the defense motion for suppression of appellant's custodial statement, where he unequivocally requested assistance of counsel after receiving his *Miranda* warnings, and was thus denied his constitutional right against self-incrimination.

II. The trial judge abused her discretion in denying appellant's motion for a severance, resulting in a violation of due process because a large amount of highly prejudicial evidence relevant to the codefendants but not appellant was heard by the jury.

> III. The trial court violated appellant's due process rights by empaneling a jury referred to only by juror numbers and by failing to give a proper cautionary instruction.
>
> IV. The evidence was insufficient to prove that appellant aided and abetted either of the two gun-carrying defendants to commit the crime of felony-firearm.

Pet. at 5, 7, 10, 12, ECF No. 1, PageID.5, 7, 10, 12.  A few months later, he filed a motion to stay the petition so that he could file a post-conviction motion for relief in state court raising additional claims.  ECF No. 7.  On November 26, 2019, the Court entered an order granting the motion and holding the case in abeyance.  ECF No. 10.  Robinson was directed to file an amended petition within 60 days after the conclusion of state court proceedings.

On February 21, 2023, Robinson filed a motion asserting that he was unable to proceed in the state courts with his new claims when he was informed by the Michigan Court of Appeals that he was "procedurally defaulted and time barred" from seeking post-conviction review.  ECF No. 14.  On March 1, 2023, the Court ordered the case reopened, and it directed the petitioner to file an amended petition by March 29, 2023, or the Court would proceed to adjudicate the claims raised in the original petition.  ECF No. 15.  The order was served on the petitioner at his address of record, but it was returned undelivered.  ECF No. 16.  The Clerk attempted to serve the petitioner a second time, using the return prison address that the petitioner wrote on the envelope for his motion, and the deadline for filing the amended petition was extended to June 1, 2023.  ECF No. 17.  That order was not returned.  The petitioner did not file an amended petition.  The Court will proceed on the claims Robinson raised in his original habeas corpus petition.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an petition for a writ of habeas

- 4 -

corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). The "holding of a Supreme Court decision is the legal rule or principle [the court the relies on] to decide a case." *Andrew v. White*, 604 U.S. ---, No. 23-6573, 2025 WL 247502, at *3 (Jan. 21, 2025) (per curiam).

"As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere

error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (citing 28 U.S.C. § 2254(e)(1)).

A.

Robinson first argues that his statement to police should have been suppressed because after he was read his *Miranda* rights, he asked the interviewing police officer about whether he needed an attorney, a question that remained unanswered. The trial court denied the motion after a pretrial evidentiary hearing. On direct review, the Michigan Court of Appeals found that the record did not support Robinson's claim that he invoked his right to counsel, agreeing with the trial court that Robinson's post-*Miranda*-warning statement, "Do I need a lawyer?"— "was not a 'request' for counsel." *Robinson*, 2017 WL 535546, at *7. The court applied an objective standard and found that "a reasonable officer, under the circumstances, would have interpreted that question as intimating that Robinson might be considering whether to assert his right to counsel," but it did not amount to a request for a lawyer. *Ibid.*

The Supreme Court has clearly established that under the Fifth Amendment, a suspect is guaranteed the right to remain silent and the right to the assistance of counsel during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444-45 (1986). Once a suspect communicates "his desire to deal with the police only through counsel," he is "not subject to further interrogation by the authorities until counsel has been made available to him." *Edwards v. Arizona*, 451 U.S.

477, 484-85 (1981). When an invocation of the right to counsel is made, officers must cease questioning the suspect. *Smith v. Illinois*, 469 U.S. 91, 98 (1984).

However, "[i]n the context of invoking the *Miranda* right to counsel . . ., a suspect must do so 'unambiguously.'" *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010) (citing *Davis v. United States*, 512 U.S. 452, 459 (1994)). This requirement "results in an objective inquiry that 'avoid[s] difficulties of proof and . . . provide[s] guidance to officers' on how to proceed in the face of ambiguity." *Ibid*. (quoting *Davis*, 512 U.S. at 458-59). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis*, 512 U.S. at 459. "[A] a statement either is such an assertion of the right to counsel or it is not." *Smith*, 469 U.S. at 97-98 (cleaned up).

The record supports the Michigan Court of Appeals's determination that Robinson did not unequivocally and unambiguously invoke his right to counsel. At the suppression hearing, Detective Bryan Gilbert testified that he and his partner interrogated Robinson at the police station after his arrest. ECF No. 9-3, PageID.180-81. Robinson was read his *Miranda* rights from a written waiver form that Robinson signed. *Ibid.* At the beginning of the interrogation, Robinson asked, "Do I need a lawyer? Is it serious? It looks like it is." *Id.* at PageID.205. The detective did not answer Robinson's question. *Ibid.* Instead, the detectives began asking Robinson questions about a preexisting charge that he had failed to report as a sex offender, taking some time on that topic before turning to questions later in the interview about the robbery. *Id.* at PageID.191-92. The interrogation lasted less than an hour. *Id.* at PageID.182. According to the detective, Robinson never invoked his right to remain silent or for counsel during the interrogation. *Id.* PageID.186. Robinson did not testify at the suppression hearing.

The Court of Appeals reasonably found that Robinson did not make an unequivocal and unambiguous request for counsel. Robinson's question whether he needed a lawyer can be interpreted as a question to the officers whether they thought he should have an attorney, or that he was personally considering aloud whether he needed an attorney. A reasonable officer in these circumstances would not necessarily have interpreted Robinson's question as an invocation of the right to counsel. Under clearly established Supreme Court law, the officers were not required to answer Robinson's question or ask clarifying questions as to what Robinson meant. *Davis*, 512 U.S. at 459. The state courts' decisions are supported by the record and consistent with federal law. Robinson is not entitled to relief under section 2254(d).

B.

Robinson next argues that he should have been tried separately from his two co-defendants. Robinson asserts the admission of "spillover" evidence more relevant to his co-defendants rendered his trial fundamentally unfair.

The Michigan Court of Appeals rejected the claim, primarily on the ground that Robinson failed to identify specific examples of spillover evidence. The court also relied on state precedent that spillover evidence rarely will warrant reversal, distinguishing *United States v. Breinig*, 70 F.3d 850 (6th Cir. 1995), which Robinson cited, where the spillover evidence was "'categorically inadmissible,' [and] 'highly inflammatory' character evidence." *Robinson*, 2017 WL 535546, at *8. The court also took note that the co-defendants' defenses were not antagonistic, and neither co-defendant testified and inculpated Robinson. *Ibid.*

According to the Supreme Court, improper joinder itself does not violate the federal constitution unless "it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986). The Sixth Circuit has

viewed this language in *Lane* as *dictum* that does not constitute clearly established federal law. *See Mayfield v. Morrow*, 528 F. App'x. 538, 541-42 (6th Cir. 2013). In any event, joint trials play a vital role in the criminal justice system. *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). They generally serve the interests of justice by avoiding inconsistent jury verdicts and facilitating the efficiency and fairness of the criminal justice system. *Id*. at 209-10. Other than cases in which a co-defendant's statement is admitted and implicates a defendant as in *Bruton v. United States*, 391 U.S. 123, 137 (1968), the Supreme Court has left the matter of severance to state law and the trial judge's discretion.

The record supports the state court determination that Robinson failed to identify specific spillover evidence admitted at the joint trial that rendered his trial unfair. Robinson's appellate brief asserted in conclusory fashion that evidence admitted against his co-defendants would not have been admitted at a separate trial. But it did not identify any specific testimony or evidence that would have fallen into that category. ECF No. 9-14, PageID.2127-28. The state court found that such generalization was insufficient to warrant relief.

At most, Robinson suggests that because his co-defendants were the more culpable perpetrators, a joint trial necessarily prejudiced his defense. But "a defendant is not entitled to severance merely 'because the proof is greater against a codefendant.'" *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014) (citing *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992)). It is well accepted that "a 'spillover of evidence' from one case to another 'generally does not require severance,' unless [the d]efendant can point to specific 'substantial,' 'undue,' or 'compelling' prejudice." *Id*. (quoting *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002)).

Because Robinson fails to point to any specific prejudicial evidence, the state court reasonably rejected the claim.

C.

In his third claim, Robinson asserts that the trial court erroneously referred to the jurors by their numbers instead of by their names during jury selection. He says that by "anonymizing" the jurors, the trial court suggested to them that the defendants were guilty and dangerous individuals from whom they needed protection.

The Michigan Court of Appeals rejected the argument because Robinson could not show how this practice, which apparently was standard operating procedure for this trial judge, harmed him in any way. The court found "no indication that any of the jurors believed that there was any significance in the use of numbers instead of names. Further, Robinson failed to demonstrate that the use of numbers prevented him from conducting meaningful voir dire or that his presumption of innocence was compromised." *Robinson*, 2017 WL 535546, at *8-9 (cleaned up).

Robinson has not cited to this Court any clearly established Supreme Court case that supports his argument. "Under AEDPA, if there is no clearly established Federal law, as determined by the Supreme Court that supports a habeas petitioner's legal argument, the argument must fail." *Miskel v. Karnes*, 397 F.3d 446, 454 (6th Cir. 2005). Although the Sixth Circuit has held that empaneling an anonymous jury should be limited to certain circumstances where there is "strong reason to believe the jury needs protection" and the court should take "reasonable precautions to minimize any prejudicial effects," *United States v. Talley*, 164 F.3d 434, 439 (6th Cir. 2008), the Supreme Court has never held that there is a constitutional right to a public jury. *See United States v. Lawson*, 535 F.3d 434, 440 (6th Cir. 2008) ("The Sixth Amendment provides defendants with a right to a public *trial* by an impartial jury, but it does not guarantee a right to a public *jury*."). Consequently, Robinson cannot show that the state court's denial of his claim was either contrary to or an unreasonable application of clearly established Supreme Court precedent.

*See Wright v. Van Patten*, 552, U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented. . . , it cannot be said that the state court unreasonably applied clearly established Federal law.").

D.

Finally, Robinson asserts that insufficient evidence was presented at trial to sustain his conviction for possession of a firearm during the commission of a felony. Robinson argues no evidence was presented at trial to suggest that he aided either of his co-defendants in carrying or possessing a firearm during the robbery.

The Michigan Court of Appeals determined that there was sufficient evidence in the record to support the conviction on an aiding and abetting theory. The court reasoned:

> It is undisputed that Diaz-Gaskin and Grayson committed felony-firearm by possessing firearms during the commission of the armed robbery. While entering the store with Diaz-Gaskin and Grayson — who were already visibly brandishing firearms — Robinson assisted in the placing of a block in the doorway to permit escape, and he also collected money from the cash register. Both of these were acts that assisted in the commission of the felony firearm violations committed by Robinson's codefendants. Based on the circumstances, a rational trier of fact could infer that Robinson either intended the commission of the felony-firearm violations committed by Diaz-Gaskin and Grayson or knew, when he aided them, that they intended to commit such violations.

*Robinson*, 2017 WL 535546, at *9.

That decision faithfully applied federal law, and it was not an unreasonable determination of the facts. It is well established that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Under the Due Process Clause, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A federal court reviewing a

state court conviction under the habeas corpus statute that is "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011).

On direct appeal, review of a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. For habeas corpus, that rubric "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id.* at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). The Sixth Circuit reads those cases as creating a gauntlet for state prisoners asserting a sufficiency-of-evidence challenge under the AEDPA: they must penetrate "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review — the factfinder at trial and the state court on appellate review. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Under Michigan law, to convict a defendant of felony-firearm under an aiding and abetting theory, the prosecution must prove "that a violation of the felony-firearm statute was committed by the defendant or some other person, that the defendant performed acts or gave encouragement that assisted in the commission of the felony-firearm violation, and that the defendant intended the commission of the felony-firearm violation or had knowledge that the principal intended its commission at the time that the defendant gave aid and encouragement." *People v. Moore*, 470 Mich. 56, 70-71, 679 N.W.2d 41, 50-51 (2004) (citation omitted).

Robinson insists that no evidence was presented that he knew his co-defendants had firearms nor that he aided them. But the evidence viewed most favorably to the prosecution

indicated that although only his two co-defendants brandished handguns during the robbery, and one of them shot the victim to death, Robinson aided them by blocking the front door from locking and by carrying and using a plastic bag to hold the proceeds of the robbery. Furthermore, Robinson admitted in his interview with police that he knew his co-defendants had firearms while he was in the car with them on the way to commit the crime. ECF No. 9-8, PageID.1392.

Robinson fails to clear the "nearly insurmountable hurdle" for petitioners seeking habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (citation omitted). He is not entitled to relief on this claim.

### III.

Neither of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 25, 2025